## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ANTHONY F. DURAN,

       Applicant,

v.                                  CV 10-0884 MCA/WPL

JAMES JANECKA,

       Respondent.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

In July of 1997, a jury convicted Anthony F. Duran of six charges stemming from the attempted rape of Sheryl Fumerola that occurred a year prior in Alamogordo, NM; the trial judge ultimately sentenced Duran to serve forty-seven years in prison for his crimes. (*See* Doc. 26 at 1-2, 6.) The matter is before me on Duran's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended. (Doc. 1; Doc. 19; Doc. 31.) Duran has seven claims of error pending before this Court, and I held an evidentiary hearing on two of the seven claims on June 29, 2012. (Doc. 51.) Because this petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to guide this Court's determinations. *See, e.g.*, *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons*, 531 F.3d 1306, 1319 (10th Cir. 2008). After carefully reviewing the record, pleadings, and testimony, I recommend that Duran's petition be denied in whole.

### PROCEDURAL POSTURE

The factual and legal issues presented by this case are complex and, at times, lengthy. Accordingly, I will take each of Duran's claims in turn, making findings of fact to the extent

necessary, explaining the relevant law, conducting an analysis and making a recommendation separately for each of the seven claims. Prior to reaching the merits of the claims, I will briefly explain the procedural posture of this case, including an overview of Duran's state criminal trial, post-trial proceedings, and his § 2254 petition. I will also outline the standard of review generally applicable to § 2254 petitions.

The charges against Duran arose out of a break-in and attempted rape that occurred on July 13, 1996, in Alamogordo, NM. Jury Trial Tape Recordings 5:328-455.[1] The victim, Sheryl Fumerola, was in her home with her ten year old son when a man who was wearing women's clothing and a mask that partially covered his face entered carrying a gun. *Id.* After some amount of time, Fumerola and her son ran from the house. *Id.* at 5:438-55. A few neighbors saw and assisted them; these same neighbors then saw a man running from the Fumerola residence and chased him down an alley. *Id.* at 6:467-525, 9:510-45. Duran was identified as the perpetrator by Fumerola and a neighbor who saw him running through the alley immediately following the incident. *Id.* at 5:308, 5:489-507, 10:136-199. There was also a plethora of circumstantial evidence admitted at trial that connected Duran to the crime.[2]

A jury in the Twelfth Judicial District for the County of Otero found Duran guilty of all charges – kidnapping, aggravated assault, aggravated burglary, tampering with evidence, theft of a credit card, and felon in possession of a firearm – on July 22, 1997. Record Proper ("RP") at 288-89. The trial court originally sentenced Duran to a term of incarceration of twenty-seven

---

[1] All hearings before the state district court were recorded on cassette tapes, and no written transcript was provided. The tapes are dated, numbered, and identified by the type of hearing. To denote the citation for the portions of the transcript discussed, I will cite to the tape recordings, the date of the hearing and/or type of hearing, the number of the tape (if necessary, it will precede the time stamp and be followed by a colon), and the time stamp listed on the tape player (ranging from 00-550).

[2] The facts of the trial were described at length in a prior order. (Doc. 26 at 2-6.)

years but, following a habitual offender hearing, enhanced the sentence by twenty years for a total term of incarceration of forty-seven years. RP at 289-90, 309-10; (Doc. 11 Ex. C).

Following his conviction, Duran filed a direct appeal. RP at 359-60. The court of appeals found that one issue, the alleged conflict of interest by the prosecutor, required remand to the trial court for a hearing but denied relief on the other claims. RP at 366-68. Duran requested a writ of certiorari from the New Mexico Supreme Court on the dismissed claims; his request was denied. (Doc. 11 Ex. O; Doc. 11 Ex. P.) The trial court held the hearing on remand on August 19, 1998 and denied relief. RP at 402-04. Duran appealed the denial, the appellate court denied relief, Duran petitioned for a writ of certiorari from the New Mexico Supreme Court, and it too denied relief. RP at 413-29; (Doc. 11 Ex. W; Doc. 11 Ex. X; Doc. 11 Ex. Y). After exhausting his direct appeals, Duran brought a petition for a writ of habeas corpus in the state district court. (Doc. 1 Ex. 4.) The court dismissed all but two grounds summarily, appointed counsel, and allowed an amended brief to be filed on the remaining issues. (Doc. 11 Ex. BB.) After Duran's counsel filed the amended petition, the trial court denied relief without a hearing (Doc. 11 Ex. EE; Doc. 11 Ex. HH.) Duran appealed the denial by petitioning for a writ of certiorari from the New Mexico Supreme Court, which was summarily denied. (Doc. 11 Ex. II; Doc. 11 Ex. KK.)[3]

On September 22, 2010, Duran filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1.) With leave of the Court, he filed a supplement to his petition on May 20, 2011. (Doc. 19.) Duran's petition raised numerous claims, some of which were exhausted and others of which were not. After requesting and reviewing additional briefing on the issue of exhaustion, I concluded that Duran had submitted a mixed petition and that a stay was not warranted because there was no possibility that Duran would obtain relief on the unexhausted

---

[3] The post-conviction motions and the grounds therefore have been discussed in detail by the Court in an earlier order. (Doc. 16 at 2-3.)

claims. (Doc. 26.) The Court agreed, adopted my recommendation, and advised Duran that, to proceed with his exhausted claims, he needed to delete the unexhausted claims from his petition via a certification. (Doc. 30 at 5.) He filed that certification on February 9, 2012. (Doc. 31.)

Duran now proceeds on seven different claims for relief: (1) ineffective assistance of trial counsel during plea proceedings (Doc. 1 at 10-11; Doc. 19); (2) juror misconduct (Doc. 1 at 22-24); (3) double jeopardy in failing to merge all of the counts (*id.* at 24-29); (4) prosecutorial misconduct (*id.* at 33-35); (5) involuntary waiver of presence at the post-trial hearing on remand (*id.* at 30-33); (6) ineffective assistance of counsel at that post-trial hearing by two different attorneys (*id.* at 37-39); and (7) judicial misconduct (*id.* at 30).

## STANDARD OF REVIEW

In § 2254 proceedings initiated after 1996, AEDPA requires federal courts to "be exquisitely deferential to the state court's resolution of the defendant's claims." *Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012). The Supreme Court aptly described AEDPA as establishing "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[.]" *Cullen v. Pinholster*, 563 U.S. ----, ----, 131 S. Ct. 1388, 1398 (2011) (citation and internal quotation marks omitted). Accordingly, if the merits of a claim were already adjudicated in state court, federal court habeas relief is only available if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) & (2) (2012).

A state court's decision is contrary to law if the rule that it applies clearly contradicts governing law, as established by the Supreme Court, or if it decides a case differently than the Supreme Court did when presented with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405, 413 (2000). The decision is an unreasonable application of law if the state court applied clearly established federal law in an objectively unreasonable manner. *Id.* at 409. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Renico v. Lett*, 559 U.S. ----, ----, 130 S. Ct. 1855, 1862 (2010) (quoting *Williams*, 529 U.S. at 410) (internal quotation marks omitted). "Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* (quotation and internal quotation marks omitted). Even if the state court does not explain its reasoning, the applicant must show that "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. ----, ----, 131 S. Ct. 770, 784 (2011); *see Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (clarifying that under AEDPA, "we owe deference to the state court's *result*, even if its reasoning is not expressly stated.").

The state court's determination of the facts is unreasonable if the state court plainly misapprehends the record in making its factual findings and the misapprehension goes to a factual issue that is central to the claim. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

If the court determines that the state court decision is not entitled to deference under § 2254(d), it must evaluate the applicant's claims *de novo*. *See id.* at 534.

### STANDARD FOR EVIDENTIARY HEARINGS & CONSIDERATION OF NEW EVIDENCE

Under 28 U.S.C. § 2254(e)(2), a federal district court may not conduct "an evidentiary hearing on a habeas claim that petitioner failed to develop in state court." *Young v. Sirmons*, 486

5

F.3d 655, 679 (10th Cir. 2007). However, "[i]f . . . the petitioner did not fail to develop the factual basis of his claim in state court, § 2254(e)(2) is not applicable and a federal habeas court should proceed to analyze whether a hearing is appropriate or required under pre-AEDPA standards." *Id.* (quoting *Bryan v. Mullin,* 335 F.3d 1207, 1214 (10th Cir. 2003)). A petitioner fails to develop his claim when he does not diligently seek an evidentiary hearing at the state court level, or is otherwise at fault. *Id.* (quoting *Williams,* 529 U.S. at 432). However, if the petitioner is diligent and is not at fault for the failure, the federal court may grant a hearing "so long as his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief." *Id.* (quoting *Hammon v. Ward,* 466 F.3d 919, 927 (10th Cir. 2006)).

In this case, I determined that Duran's allegations related to ineffective assistance of counsel at plea bargaining could have entitled him to relief if true and could not be considered without additional evidence. (Doc. 26 at 19.) Thus, I held an evidentiary hearing. At the hearing, the Respondent raised an objection to the entire hearing. However, because the factual basis of the claim had not been developed by the state court and because Duran made efforts to obtain an evidentiary hearing, (*see, e.g.*, RP at 514-20), it was within my discretion to hold an evidentiary hearing.

Even where an evidentiary hearing is permissible under § 2254(e)(2), the evidence obtained at the hearing is inadmissible to determine whether a claim adjudicated on the merits in state court was contrary to or an unreasonable application of clearly established law. *Black*, 682 F.3d at 895 (citing *Pinholster*, 563 U.S. at ----, 131 S. Ct. at 1398). Specifically, the Supreme Court recently held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at ----, 131 S. Ct. at 1398. Moreover, the language of § 2254(d)(2) indicates that the same is true of review under that

6

subsection. 28 U.S.C. § 2254(d)(2) (2012) (stating that relief may only be granted if the state court decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."). All of Duran's claims, with one exception, were considered on their merits in state court. Thus, in determining whether the state court's decision as to each claim was contrary to a then-established law, an unreasonable application of the law to the facts of the case, or an unreasonable determination of the facts, I am limited to considering the facts that were before the state court at the time of its decision. *See Pinholster*, 563 U.S. at ----, 131 S. Ct. at 1399. However, if the state court decision was contrary to law or based on a misapprehension of the facts, I may consider evidence adduced at an evidentiary hearing.

### INEFFECTIVE ASSISTANCE OF COUNSEL AT PLEA NEGOTIATION STAGE

#### I.      28 U.S.C. § 2254(d) Review

Duran alleges that he was provided constitutionally deficient representation during the plea negotiation stage of his criminal proceedings. According to Duran, he was offered a twenty year plea bargain, but his attorney, Edward Benavidez, advised him to reject the offer because "[n]o one [could] positively identify [him]." (Doc. 1 at 11.) Duran claims that the advice regarding the identification was the main or only reason he went to trial. (*Id.* at 16, 19.) He alleges that Benavidez provided this advice because he had not done any investigation and was unaware of the strength of the evidence against Duran. (*Id.* at 11.) He additionally contends that Benavidez did not speak with him much during the pre-trial process, failed to interview available witnesses and conduct an investigation, and failed to advise him of the evidence against him. (*Id.* at 10.) He states that he would have pled guilty and would not have exercised his right to trial but for Benavidez's deficient performance. (Doc. 19 at 6.)

This claim was presented and exhausted in Duran's state habeas proceedings; the state district court concluded that Duran could not demonstrate prejudice because he only received five additional years as a result of exercising his right to trial. Accordingly, the state trial court rejected Duran's claim, and the state supreme court summarily affirmed the decision.

Given the facts before the state court, it is clear that this determination was in error. The state court relied entirely on its determination that Duran was not prejudiced by what it found was a five year sentencing disparity. This finding was an unreasonable determination of the facts because the difference between the plea offer and the sentence received was, according to Duran's allegations before the state court, twenty-seven years. Additionally, the state court's conclusion constituted an unreasonable application of the law, because "any amount of [additional] jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001). Since the state court unreasonably determined the applicable facts and law, I do not afford its determination deference under § 2254(d), and I will instead consider this claim *de novo*.

II.     *Evidence Presented at the Evidentiary Hearing*

At the evidentiary hearing, four witnesses testified about the plea offer and the assistance of counsel that was provided: Benavidez, Duran's counsel in the ten months prior to and during the trial; Duran; Josephine Duran, Duran's mother; and Canon Stevens, the former district attorney who prosecuted the case.

Benavidez testified that he had practiced law for five or six years prior to representing Duran, during which time he handled thousands of misdemeanor cases and over one hundred felony cases. He was unable to recall, though, the year in which he graduated from law school and began practicing. Duran's mother retained him to represent Duran; Mrs. Duran knew of him

because her niece was married to Benavidez at that time. Benavidez testified that, from the time that he entered his appearance in October of 1996, he was aware of the sentence Duran faced and Duran's prior criminal history. He also attested to being aware that the State had a strong case against Duran.

Benavidez testified that he conducted an investigation after he was retained, including interviewing all of the prosecution's witnesses at least a month before the trial. He did not hire an investigator to assist in the investigation. He stated that he did not communicate with Duran by phone or in writing, though he later indicated that he spoke to Duran by phoneaw2w on a few occasions. Benavidez said that he visited Duran at the jail four times in the nine months preceding the trial, and, during one of those visits, he played tape recordings of all of the witness interviews for Duran. He also claimed that he went through the entire discovery packet with Duran.

Benavidez could not remember the details of the plea offer presented by the prosecution, but he knew that it was an informal, unwritten offer and that the prosecutor did not set a deadline on the plea. He recalled engaging in plea negotiations with the prosecutor and seeking a sentence of around twenty-three years. However, he also remembered thinking that the plea offer was unreasonable. He claimed that he discussed the offer with Duran a minimum of four times and that, each time, Duran seemed uninterested and insisted on going to trial. He later clarified that he dropped the plea issue and did not push it after Duran made clear that he wanted his day in court. Nonetheless, Benavidez asserted that he told Duran about the application of good time credits and the habitual offender enhancement, though he did not tell Duran that the plea offer could have been particularly good given the possible enhancements.

Benavidez was not aware of the propensities and practices of the trial judge, New Mexico District Judge Robert M. Doughty, and he did not anticipate that Judge Doughty would impose a maximum sentence including all possible enhancements. He stated that he was shocked when Duran received the maximum possible sentence. He testified that any plea offer would have to be accepted by the judge and that, based on Judge Doughty's demeanor, he is not sure that Judge Doughty would have accepted a plea agreement.

At times, Benavidez's testimony reflected a lack of memory about his representation of Duran. He had no recollection of a hearing on a motion for new trial that occurred a little more than a year after the trial. He said that he went to Alamogordo to argue the motion but that the hearing was continued and that he did not participate in any proceedings after the trial. This assertion is clearly contradicted by the record, which demonstrates that Benavidez appeared on behalf of Duran at the August 19, 1998 hearing on the motion for new trial and represented him throughout the hearing, presenting argument to the court and cross-examining witnesses. *See* August 19, 1998 Hearing Tape Recordings.

Duran's testimony was quite consistent with the information provided in the various habeas petitions that he has written over the years. He testified that Benavidez visited him two or three times over the ten months of his representation, though he later conceded that he may have visited four times, and that each visit lasted approximately one hour. He stated that he never communicated with Benavidez by phone or letter.

Duran explained his understanding of Benavidez's advice regarding the plea: the offer was for twenty years, he could receive between twenty-four and twenty-seven years if he went to trial, and the State's evidence was lacking because no evidence positively placed him at the crime scene and no witnesses could positively identify him. According to Duran, Benavidez

10

never talked to him about habitual offender or firearm enhancements. He testified that Benavidez only communicated the plea offer to him once, during his first visit. While Duran was considering the offer, Benavidez offered that no one could identify him and inquired why he would plead guilty if there is no evidence against Duran. There were no discussions about a plea as the trial approached. Duran testified that, had he known the strength of the State's evidence, he would have accepted the twenty year plea offer. He explained that he had pled guilty to felony charges on two prior occasions and that he would not have had a problem pleading guilty in this case.

Duran also explained what he knew of the evidence against him. He claimed that he had not reviewed the discovery from the State until he received it from his appellate attorney and that he did not know who all of the State's witnesses would be until the day of trial. Moreover, he never heard the tapes of the witness interviews, and Benavidez never advised him that the victim could identify him. He said that Benavidez never told him that the State had a strong case. All that he knew was that the State had hair samples and handwriting samples, but he did not know about the additional physical evidence.

Mrs. Duran testified regarding her interactions and conversations with Benavidez. She stated that she did see a copy of the discovery, which she paid for and sent to Benavidez. From her conversations with Benavidez, she was under the impression that the evidence did not connect her son to the crime, and she was unaware of any plea offer. She did recall Benavidez telling her that the judge could add years for certain things, and she believed that they did discuss the habitual offender enhancement. She did not recall testifying at Duran's sentencing hearing on the habitual offender enhancements. Mrs. Duran also expounded at length on her desire to have her son return home.

Canon Stevens testified as to her memory of the plea negotiations. By the time of this trial, she had been practicing law for over thirteen years, doing mostly criminal work. She identified an exhibit, the Criminal Information against Duran with handwritten notes, as her copy of the document with her notes about the plea offer that she extended. Though she did not recall making the offer, she testified that the offer required Duran to plead guilty to kidnapping, aggravated burglary, tampering with evidence, and felon in possession of a firearm in exchange for the dismissal of the other two counts. Had that offer been accepted, Stevens explained that the base sentence would have been twenty-two years and, with enhancements totaling up to fourteen years, the maximum possible sentence would have been thirty-six years. She recalled that Benavidez countered her offer with a plea to serve eleven years with five years of probation, which she rejected. She recalled that the evidence in this case was very strong and stated that she never would have extended a twenty year plea offer in this case due to Duran's prior criminal history.

After hearing and reviewing the testimony, I have made findings as to each witness' credibility. Though Benavidez testified as to his investigations, communications with Duran, and participation in post-trial motions, I find that much of his memory has been distorted over the years. His testimony was inconsistent at times, and his lack of any memory of representing Duran at a somewhat lengthy and important hearing is concerning. However, I do not award Duran's testimony complete credibility, either. Not only does he have a strong interest in telling the story in a manner that would lead to his release, but I believe that his memory has been colored by repeating this story over the years while seeking various forms of post-conviction relief. I find that Mrs. Duran is biased by her strong desire for her son's release; accordingly, she was not a credible witness. The only individual whose testimony I find fully credible is Stevens.

Stevens admitted that she remembered little of her negotiations with Benavidez aside from what is indicated in her notes. She did remember, however, that there was a strong case against Duran, and she was confident that she would not have offered a twenty year plea agreement in the case.

Following the hearing, I allowed the parties to supplement the record with additional evidence on credibility. A little less than a month after the hearing, Mrs. Duran prepared an affidavit accusing Stevens of talking to her about the subject matter of the evidentiary hearing while they waited to testify. (Doc. 56 Ex. A.) Stevens prepared an affidavit in which she admitted that she spoke to Mrs. Duran but vehemently denied discussing the subject of the hearing. (Doc. 60 Ex. 1.) I do not credit Mrs. Duran's version of the conversation for several reasons. This affidavit was written not only after Mrs. Duran listened to the testimony of Stevens but also after she reflected for nearly a month on the content and import of that testimony. Had Mrs. Duran thought that something improper occurred immediately before her testimony, I have no doubt that she would have brought it to my attention during the hearing. This is because she had no difficulty interrupting her testimony to ask me why her son was wearing a prison uniform rather than a suit. Surely she would have raised any other concerns. Finally, Mrs. Duran clearly expressed her bias during her testimony, describing the reasons she needs her son to return home. I therefore find Mrs. Duran's affidavit incredible and not worthy of belief, and it does not alter my estimation of Stevens' credibility.

### III.   *Factual Findings*

Drawing from the above described testimony, my credibility findings, and the records admitted into evidence during the hearing, I make the following conclusions. Regarding the substance of the plea offer, I find that the first offer that the prosecution extended would have required Duran to plead guilty to kidnapping, aggravated burglary, tampering with evidence, and

felon in possession of a firearm. (*See* Doc. 52 Ex. 1 at 1.) The base sentence for those offenses was twenty-two years but, after considering Duran's two prior felony convictions, Stevens offered a maximum term of incarceration of thirty-six years.[4] (*Id.*) Stevens stated during the hearing that Duran could have argued for some enhancements to run together, but given that Judge Doughty sentenced Duran to the maximum term of imprisonment and stated that his goal was to separate Duran from society for as long as possible, December 29, 1997 Hearing Tape Recording 435-442, I find it likely that Duran would have been sentenced to thirty-six years had he accepted this offer.

I further find that Benavidez and Stevens continued negotiations regarding a plea agreement after Stevens extended the thirty-six year plea offer, but these negotiations failed. On May 15, 1997, Benavidez requested that Stevens send a plea offer. (Doc. 52 Ex. 6 at 4.) Approximately two weeks prior to the trial, on July 7, 1997, Stevens noted that Benavidez offered a plea agreement with a total sentence of eleven years followed by five years of probation. (Doc. 52 Ex. 6 at 3.) Stevens apparently advised him that she would not accept a plea to a sentence of less than thirty years. (*Id.*) While I recognize that, in the First Amended Docketing Statement, Benavidez indicated that Stevens offered a "20 year plea," he did so in the context of arguing that Duran was prejudiced by the conflict of interest with the District Attorney. RP at 359 ("A 20 year plea was offered . . . but defense counsel was never allowed to negotiate with the District Attorney himself . . . ."). Based on the context and the content of Stevens' notes, I find that the docketing statement does not accurately represent the plea that was offered. Thus, the only formal plea offer that the Stated extended to Duran was the thirty-six year offer.

---

[4] Though it is difficult to understand how Stevens calculated the maximum of thirty-six years, she, as the offeror, is the master of her offer. *See* RESTATEMENT (SECOND) OF CONTRACTS § 58 cmt. a (1981). Thus, I do not question that under Stevens' plea offer, Duran would have served a maximum of thirty-six years.

Regarding the performance of Benavidez, I find that he did advise Duran of the initial plea offer several months prior to the trial. Duran rejected that offer, and Benavidez did not discuss the plea offer with Duran after that time. Though Benavidez continued to negotiate with Stevens, the offer never changed significantly. Benavidez conducted an investigation and interviewed most if not all of the witnesses that the State called at trial. However, that investigation was conducted after Benavidez discussed the plea offer with Duran. Thus, when Benavidez discussed the offer with his client, he could not advise him as to the strength of the case against him.

Benavidez's lack of knowledge about the proclivities of the bar in Alamogordo, including both the prosecutor and the judge, placed him at a serious disadvantage when advising Duran about the plea offer. It seems that he did not press the plea issue because he believed that the plea bargain extended by Stevens was unreasonable based on his experience in Albuquerque, where he indicated it was uncommon for defendants to receive such harsh sentences and lengthy plea offers for similar crimes. I find that Benavidez did advise Duran of the maximum sentence, including enhancements, but then estimated his likely sentence if convicted of all charges at trial as less than thirty years.[5]

IV.   *Legal Standard and Analysis*

The Sixth Amendment guarantees criminal defendants the right to have adequate counsel present at all critical stages of the proceedings. *Missouri v. Frye*, 566 U.S. ----, ----, 132 S. Ct. 1399, 1405 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). The negotiation of a plea bargain is one of these critical stages. *Id.* at 1406 (quoting *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S. Ct. 1473, 1486 (2010)). Indeed, because "plea bargains have become so central to

---

[5] A sentence under thirty years could have been imposed even if the judge imposed the maximum for each charge if he ran the habitual offender enhancements concurrently and only enhanced two charges with the firearm enhancement, as was indicated on the Criminal Information.

the administration of the criminal justice system[,] . . . defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Id.* at 1407. Though the Supreme Court declined to define those duties with specificity, it did conclude that defense counsel is required to communicate the terms of a potentially favorable, formal plea offer to his or her client. *Id.* at 1408.

Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Frye*, 566 U.S. at ----, 132 S. Ct. at 1405 (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). Thus, a defendant must demonstrate both that defense counsel's performance fell below the objective standard of reasonableness and that he was prejudiced as a result of counsel's deficient performance. *Strickland*, 466 U.S. at 687.

  a. <u>Reasonableness of Counsel's Performance (First Prong)</u>

The first prong of the *Strickland* test requires Duran to show that Benavidez's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. To meet this prong, the performance must have been "completely unreasonable, not simply wrong." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000) (citing *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997)). Judicial scrutiny of counsel's performance is highly deferential, and courts apply a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 at 690.

Neither the Supreme Court nor the Tenth Circuit has clearly enunciated what is constitutionally required of counsel in advising his or her client about a plea offer. Nonetheless,

there is persuasive guidance. In *Frye*, the Court looked to codified professional standards as a guide in concluding that the failure to advise a client of a plea offer amounted to ineffective assistance. 566 U.S. at ----, 132 S. Ct. at 1408. The relevant American Bar Association standard applicable to advice regarding a plea offer states, "To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and address considerations deemed important by defense counsel or the defendant in reaching a decision." ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2(b) (3d ed. 1999).

In a very recent decision, the Sixth Circuit announced the obligations of counsel in advising his or her client about a plea offer that are consistent with the professional standard. *Titlow v. Burt*, 680 F.3d 577 (6th Cir. 2012). The *Titlow* Court acknowledged that the decision to plead guilty rests with the client but stated that "the attorney has a clear obligation to fully inform her client of the available options." *Id.* at 587 (quoting *Smith v. United States,* 348 F.3d 545, 552 (6th Cir. 2003)). This obligation requires the attorney to review the charges with the client, including "explaining the elements necessary for the government to secure a conviction, discuss[ing] the evidence as it bears on those elements, and explain[ing] the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Id.* (quoting *Smith*, 348 F.3d at 553). The court found a concomitant obligation on an attorney to conduct reasonable investigations or determine that such investigation is unnecessary, because "[c]ounsel cannot responsibly advise a client about the merits of different courses of action, and the client cannot make informed decisions, unless counsel has first conducted a thorough investigation." *Id.* (quoting *Dickerson v. Bagley,* 453 F.3d 690, 694 (6th Cir. 2006)).

While the professional standard and the Sixth Circuit's holding are not binding on this Court, they are consistent with well-known and basic expectations of counsel. In accord with the persuasive authority, I conclude that defense counsel is required to advise his or her client of the elements of the charges, the evidence as it bears on those elements, and the possible sentencing exposure the client faces as a result of pleading guilty or going to trial. In order to fully advise a client on these topics, counsel must conduct reasonable investigations prior to providing the advice or determine that an investigation is unnecessary. Alternatively, if an investigation is deemed necessary but is not conducted until after such advice is given, the attorney must discuss with the client any newly discovered evidence as it bears on the elements of the crimes charged and the client's options.

In evaluating Benavidez's performance, then, I recognize the presumption that he acted reasonably. Nonetheless, I conclude that this presumption is overcome by the evidence that he provided objectively unreasonable assistance. Benavidez admitted that he did not discuss the plea offer at any length with Duran after their initial meeting, which occurred shortly after he was retained in October of 1996. It is clear that he did not interview the State's witnesses until much later, around June of 1997. (*See* Doc. 54 Ex. 2 at 1-3.) Because there is no doubt that Benavidez did not conduct an investigation prior advising Duran of his options, and in light of the enunciated legal standards, he did not meet the basic obligations of defense counsel in advising his client. Benavidez's performance was objectively unreasonable and, consequently, constitutionally deficient.

b.   Resulting Prejudice (Second Prong)

The prejudice prong, in the context of plea negotiations, requires that Duran make three separate showings. First, he must show that "the end result of the criminal process would have

18

been more favorable by reason of a plea . . . ." *Frye*, 566 U.S. at ----, 132 S. Ct. at 1409 (citation omitted). In other words, he must show that the terms under the offer would have been less severe than under the judgment and sentence that were actually imposed. *Lafler v. Cooper*, 566 U.S. ----, ----, 132 S. Ct. 1376, 1385 (2012).

Next, Duran must demonstrate "a reasonable probability" that, but for the ineffective advice of counsel, he would have accepted the plea offer and foregone his right to trial. *Id.* "A reasonable probability," as the Supreme Court has defined the term, "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The burden is relatively low and requires less than a preponderance of the evidence. *Young*, 551 F.3d at 975 (citations omitted). To determine whether the petitioner would likely have accepted the offer, the court may consider factors including the petitioner's statements throughout post-conviction proceedings, a substantial disparity between the actual sentence and the plea offer, and the petitioner's statements during plea discussions.[6] *Titlow*, 680 F.3d at 588-89.

Finally, Duran must demonstrate "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Frye*, 566 U.S. at ----, 132 S. Ct. at 1409. Under New Mexico law, it is within the trial court's discretion to accept or reject a plea agreement. NMRA, Rule 5-304 (West 2012); *State v. Leyba*, 453 P.2d 211, 214 (N.M. Ct. App. 1969) (citation omitted). If the defendant and the prosecution bargain for a specific sentence, the court is required to either accept the specific sentence or reject it and give the defendant an

---

[6] I note that there is a split among the courts of appeals as to whether a petitioner's post-conviction testimony that he would have accepted a plea offer is sufficient to show prejudice, or, conversely, whether the petitioner must adduce objective evidence to that effect. *Compare Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998) (objective evidence required), *and United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (same), *with Magana v. Hofbauer*, 263 F.3d 542, 547 n. 1 (6th Cir. 2001) (objective evidence not required). The Tenth Circuit has not addressed this issue, and I need not resolve it at this juncture.

opportunity to withdraw his guilty plea. NMRA, Rule 5-304 (West 2012); *State v. Miller*, ---
P.3d ----, ----, 2012 WL 2053655, at *3 (N.M. Ct. App. Mar. 16, 2012) (quoting *State v. Pieri*,
207 P.3d 1132, 1134 (N.M. 2009)). New Mexico law also allows the State to withdraw a
negotiated plea agreement prior to its acceptance by the court if new information is discovered so
long as the defendant did not detrimentally rely on the agreement. *State v. Bourland*, 862 P.2d
457, 458-59 (N.M. Ct. App. 1993). However, it is not clear whether the State can withdraw the
plea offer once it is made and accepted by the defendant absent a change in circumstances. *Id.* at
458 (quoting *State v. Taylor*, 752 P.2d 781, 786 (N.M. 1988), *overruled on other grounds by
Gallegos v. Citizens Ins. Agency*, 779 P.2d 99, 108 (N.M. 1989)) (stating that plea negotiations
must be governed by fair play on both sides).

Despite Benavidez's clearly deficient performance, Duran cannot demonstrate that he
was prejudiced. He has not demonstrated a reasonable probability that he would have accepted a
plea offer had he been sufficiently advised. Given that the term of incarceration under any
circumstance exceeded thirty-five years, the eleven year disparity between the maximum term
under the plea offer and the sentence actually imposed is not so substantial as to mandate a
conclusion that Duran would have accepted the offer.[7] Moreover, given that Benavidez
reasonably estimated Duran's likely post-trial sentence as near or even less than the plea offer,
the actual disparity has even less weight.[8] All of the additional evidence presented at the hearing
demonstrated Duran's strong desire to exercise his right to a jury trial. Benavidez testified that
Duran was adamant about going to trial, that his mother insisted on trial, that his mother had
significant sway over Duran, and that Duran maintained his innocence from October of 1996

---

[7] Notably, Duran testified that when he believed that the plea offer and the post-trial sentence would both be under
thirty years, he did not perceive the seven year reduction in sentence as particularly advantageous.

[8] Counsel may provide a good-faith estimate of a defendant's likely sentence and is not ineffective if that estimate is,
in the end, incorrect. *See United States v. Estrada*, 849 F.2d 1304, 1307 (10th Cir. 1988).

through the trial. Duran did not contradict this testimony; he merely asserted that he wanted a trial because he was not advised of the strength of the State's evidence. Though Duran has repeatedly asserted in post-conviction proceedings that he would have accepted the plea agreement, he was functioning on the assumption that the plea offer was to a twenty year sentence, not a thirty-six year sentence.

Duran also failed to demonstrate a reasonable probability that the trial court would have accepted a plea agreement in this case. Trial judges in New Mexico have complete discretion in accepting or rejecting plea agreements. During Duran's sentencing, Judge Doughty described what he perceived as the inherent problem with plea bargaining – that it "puts dangerous people on the streets . . . ." Jury Trial Tape Recordings 17:421. He explained that Duran had been allowed a plea bargain in the past and was released back onto the streets. *Id.* at 17:414-417. These statements cast significant doubt on whether Judge Doughty would have allowed Duran to plead guilty pursuant to a plea agreement and receive a lesser sentence. At the evidentiary hearing, Benavidez also expressed some doubt as to whether Judge Doughty would have accepted a plea agreement in this case. Thus, there is little reason to believe that Judge Doughty would have accepted the plea bargain.

In summary, though Duran has demonstrated that Benavidez's representation fell short of the constitutional requirements for criminal defense attorneys, he has not shown that he was prejudiced by the deficient representation. Specifically, he has not demonstrated by a reasonable probability that he would have accepted the plea offer had Benavidez provided adequate assistance or that Judge Doughty would have subsequently accepted the plea agreement. Accordingly, I recommend that the Court deny relief on this claim.

### JUROR MISCONDUCT

One of the jurors at the trial, Juan Cardiel, allegedly knew Duran's family and did not reveal that fact during voir dire. (Doc. 1 at 22-24.) Duran claims that Cardiel was once married to one of Duran's cousins and that Duran's mother provided translation services for Cardiel's parents occasionally and refused to assist one of Cardiel's relatives in immigrating to the United States. (*Id.* at 22.) Duran claims that he did not know of the connection between his family and Cardiel's family until after the conclusion of the trial. (*Id.* at 23.)

Duran exhausted this issue upon the direct appeal following his trial. The appellate court found that, because the issue was not raised in the trial court, it had been waived. RP at 366-67. The state supreme court summarily denied Duran's petition for a writ of certiorari. (Doc. 11 Ex. P.) In Duran's state habeas petition, he raised this issue with the district court (though it was not exhausted), and that court held that Duran waived the argument by failing to timely object to the juror. (Doc. 11 Ex. HH at 2.) In other words, the state court denied relief on this claim based on an independent and adequate state procedural ground.

The Respondent has not argued that the Court is barred from reviewing this claim under the independent and adequate state ground doctrine. This doctrine is an affirmative defense, but it also "implicates important values that transcend the concerns of the parties to an action." *Alverson v. Workman*, 595 F.3d 1142, 1164 (10th Cir. 2010) (quoting *Hardiman v. Reynolds,* 971 F.2d 500, 503 (10th Cir. 1992)). Thus, the court may raise it *sua sponte*, and I recommend that the Court do so here. *Id.* (quotation and citation omitted).

In general, federal courts do not review issues that have been defaulted in state court on an independent and adequate state procedural ground unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice. *See Coleman v.*

*Thompson,* 501 U.S. 722, 750 (1991); *Steele v. Young,* 11 F.3d 1518, 1521 (10th Cir. 1993). In New Mexico, "[i]t is well-settled that objections must be raised below to preserve an issue for appellate review." *State v. Barrera*, 22 P.3d 1177 (N.M. 2001) (quoting *State v. Lucero,* 725 P.2d 266, 269 (N.M. Ct. App. 1986)). Accordingly, the state court's decision rested entirely on an independent and adequate state procedural rule. Thus far, Duran has demonstrated neither cause and actual prejudice nor a fundamental miscarriage of justice to excuse the application of the procedural bar. *See Coleman*, 501 U.S. at 750. However, he is on notice of my recommendation that the Court invoke procedural default *sua sponte*, and he may utilize his objections to attempt to show that the procedural default should be excused. *See generally Hardiman*, 971 F.2d at 501-02 (requiring that courts provide notice before invoking procedural default *sua sponte*).

### DOUBLE JEOPARDY

The jury convicted Duran of six charges based on the attack on Fumerola, and Judge Doughty sentenced him to consecutive terms for each offense. Duran contends that these consecutive sentences violate his right under the Fifth Amendment to be free of double jeopardy. (Doc. 1 at 24-29.) He argues that the offenses should have been merged for sentencing because they arose from the same underlying transaction and necessarily involve unitary conduct. (*Id.*)

Duran raised and exhausted this claim in his state habeas petition. (*See* Doc. 11 Ex. II at 2.) The district court rather summarily held that "[t]here was no merger of offenses as complained about by Defendant." (Doc. 11 Ex. HH at 2.) That decision was summarily affirmed by the state supreme court. (Doc. 11 Ex. KK.)

Duran has not presented a colorable claim of a double jeopardy violation, and the state court determination is entitled to deference. The "same transaction" test for double jeopardy "has never been the law." *Yparrea v. Dorsey*, 64 F.3d 577, 579 (10th Cir. 1995). Merger is an aspect

of double jeopardy that involves a determination of whether multiple offenses occurred so as to justify the imposition of multiple punishments. To define merger for double jeopardy purposes, I must look to state court decisions. *Id.* at 580. Under New Mexico law, merger can only occur when one offense necessarily involves another and not when different evidence is required to prove each offense. *See State v. Bachicha*, 808 P.2d 51, 53 (N.M. Ct. App. 1991) (citations omitted).

> To determine whether one offense "necessarily involves" another offense, the definitions of the two crimes are examined to determine whether the elements are the same. An included offense does not have any element not included in the greater offense so that it is impossible to commit the greater offense without necessarily committing the included offense.

*Id.* (quoting *State v. Muise*, 707 P.2d 1192, 1202 (N.M. Ct. App. 1985)) (internal citations omitted). Importantly, and consistent with federal law, New Mexico does not apply the "same transaction" test to the issue of merger. *Id.* (citing *State v. Tanton*, 540 P.2d 813 (N.M. 1975)).

It is clear that the offenses of kidnapping, aggravated assault, aggravated burglary, tampering with evidence, theft of a credit card, and felon in possession of a firearm each require proof of a separate element, and so each constitute a separate offense for which separate punishment may be imposed. Specifically, kidnapping requires that a person be confined or restrained, N.M. STAT. ANN. § 30-4-1(4) (West 2012); aggravated assault requires proof of an assault or striking, N.M. STAT. ANN. § 30-3-2(A) (West 2012); and aggravated burglary requires proof of an unauthorized entry, N.M. STAT. ANN. § 30-16-4(A) (West 2012). The distinctions between the other charges are so evident that they do not warrant discussion.

Duran has not presented a colorable claim that the separate punishment for the six offenses of which he was convicted ran afoul of the double jeopardy clause. I recommend that the Court affirm the judgment of the state court.

24

**PROSECUTORIAL MISCONDUCT BASED ON CONFLICT OF INTEREST**

The District Attorney for the Twelfth Judicial District at the time of Duran's trial, Scot Key, had represented Duran in a prior criminal proceeding. RP at 367. Duran filed a motion for a new trial based on an alleged conflict of interest before the trial court, which was denied without a hearing; he appealed, and the appellate court ordered the trial court to hold a hearing on the motion. *Id.* Key testified at the hearing, and the trial court conducted an *in camera* review of the prosecutor's file. *See* August 19, 1998 Hearing Tape Recordings; RP at 400. The trial court found that there was an attorney-client relationship between Key and Duran based on a case that terminated on March 1, 1996, that the instant proceedings were based on an offense committed in July of 1996, and that Key implemented a traditional firewall and did not communicate about the case with the prosecuting attorney. RP at 403. Accordingly, the court concluded that there was no conflict and denied the motion for new trial. *Id.* at 404.

Duran appealed the trial court's determination, and the appellate court held that per se disqualification of the district attorney's office was not required. (Doc. 11 Ex. W at 6.) Further, it affirmed the trial court's conclusion that disqualification was not required since Key had sufficiently distanced himself from the proceedings and the present case was not directly related to the past case in which Key represented Duran. (*Id.*)

Under § 2254, federal habeas corpus relief is only available based on a violation of the Constitution or federal law, and a state court does not unreasonably apply clear federal law if it declines "to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance,* 556 U.S. 111, 122 (citations and internal quotation marks omitted). The United States Supreme Court has not decided whether there is a general due process right to a conflict-free prosecutor. *See Johnson v. Horel*, No. C 07–4483 PJH, 2010 WL

4722634, at *23 (N.D. Cal. Nov. 12, 2010) (citing *People v. Vasquez,* 137 P.3d 199 (Cal. 2006)).

Because there is no clearly established law regarding whether a defendant is entitled to a

conflict-free prosecutor, then, I cannot conclude that the state court determination was contrary

to or an unreasonable application of the law. *See* 28 U.S.C. § 2254(d). Instead, I must defer to the

state court's decision and find that Duran is not entitled to relief on this claim.

Moreover, even assuming that there is a right to a conflict-free prosecutor, Duran must

show that he was prejudiced by the purported conflict. *See Brecht v. Abrahamson,* 507 U.S. 619,

637 (1993) (holding that error is harmless and cannot support habeas relief unless it had a

substantial and injurious effect or influence in determining jury's verdict). He makes no

allegation regarding prejudice; thus, his claim omits an essential element required for relief and

fails as a result.

### WAIVER OF PRESENCE AT POST-TRIAL HEARING

At the hearing before the trial court on the motion for new trial in August of 1998, Duran

was not present. Benavidez, who had withdrawn as counsel of record as of December 2, 1997,

and Kris Knutson, Duran's appointed public defender, appeared on his behalf. *See* August 19,

1998 Hearing Tape Recordings. Judge Doughty stated that he had expected Duran to be present,

but Benavidez advised the court that a transport order was not done and that Mrs. Duran told him

that Duran did not want to come to the hearing. *Id.* at 1:18-20. Benavidez proceeded to waive

Duran's right to appear. *Id.* at 1:20-23. The State indicated that it preferred to have a waiver in

writing, and the court concluded it would hold the hearing so long as a written waiver was

obtained afterward. *Id.* at 1:24-32. On more than one occasion during the hearing, Judge

Doughty expressed discomfort with Duran's absence from the hearing. *Id.* at 1:365-69. Over the

course of the hearing, the court heard testimony from Key and Stevens regarding their

26

communications about Duran and Stevens' authority regarding plea negotiations. *Id.* at 1:425-2:400. Benavidez testified to Key's attorney-client relationship with Duran as he understood it. *Id.* at 2:410-550. Knutson never objected to Duran's absence, and, a little over three weeks after the hearing, Duran executed a waiver of presence form. (Doc. 1 at 32); RP at 401. That form was also signed by Benavidez, who indicated that he was counsel for Duran. RP at 401.

This issue was exhausted on Duran's direct appeal from the denial of his motion for new trial. The state appellate court did not decide whether Duran had a right to be present at the hearing but assumed that he did and found that there were no facts indicating that the trial court erred in accepting Benavidez's waiver of Duran's presence at the hearing. (Doc. 11 Ex. W at 5.) It further found no indication that the signing of the waiver, though completed three weeks after the hearing, was not knowing or voluntary. (*Id.*) The state supreme court summarily denied review. (Doc. 11 Ex. Y.)

The right to be present is based in the Due Process Clauses of the Fifth and Fourteenth Amendments and applies at "any stage of the criminal proceeding that is critical to the outcome," if the defendant's "presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quotation omitted). In construing this right as it relates to pre- or post-trial hearings, the federal courts have generally observed a law-fact dichotomy: while a defendant need not be present at a hearing on a question of law, he has a right to be present when fact issues are presented. *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (citing FED. R. CRIM. P. 43(c)(3); 3A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 721.1 at 12 (2d ed. 1982)).

However, the right to be present at fact gathering hearings is not absolute; in the context of a hearing on a motion for new trial, the right attaches when a fair resolution of the issues

might be thwarted by the defendant's absence. *United States v. Lampton*, 158 F.3d 251, 255 (5th Cir. 1998); *United States v. Sanchez*, 917 F.2d 607, 619 (1st Cir. 1990); *see also Hale v. Gibson*, 227 F.3d 1298, 1312 (10th Cir. 2000). In other words, the defendant must demonstrate that, had he been present, he could have assisted either his counsel or the court in a way that would have resulted in a more reliable hearing. *United States v. Boyd*, 131 F.3d 951, 954 (11th Cir. 1997). Furthermore, the right to be present may be waived; while any such waiver must be knowing and voluntary, *Taylor v. United States*, 414 U.S. 17, 19-20 (1973), it need not come directly from the defendant. *Clark*, 214 F.3d at 324 (quoting *Polizzi v. United States*, 926 F.2d 1311, 1322 (2d Cir. 1991)). A defendant's failure to object at the time the decision is made to proceed without him can also constitute a waiver. *United States v. Gagnon*, 470 U.S. 522, 528-29 (1985).

I will adopt the state court's assumption that Duran had a right to be present at the hearing on the motion for new trial. Given that assumption, the state court's acceptance of Benavidez's verbal waiver of Duran's presence was an unreasonable application of the facts to the law. While a defendant's right to be present can be waived by his attorney, Benavidez was no longer Duran's counsel. Although he purported to represent Duran at the hearing, Benavidez had withdrawn as his attorney six months earlier. Thus, any waiver by Benavidez was invalid.

However, the waiver signed by Duran in combination with the fact that Knutson did not object to his absence prove fatal to Duran's claim. Logically, a waiver signed after the fact cannot, on its own, suffice as a knowing waiver. However, when the after-the-fact waiver is considered in combination with Knutson's failure to object, it is clear that the state court did not make an unreasonable determination that a valid waiver existed. Cases discussing waiver by failure to object have held that waiver occurs even where the defendant did not know about the hearing until after it occurred if he does not object or take steps before the trial court to cure any

harm done. *United States v. Jones*, 381 F.3d 114, 122 (2d Cir. 2004). Knutson did not object during the course of the hearing, despite Judge Doughty's repeated statements expressing discomfort with Duran's absence. Though Duran did not know of the hearing at the time, he signed a waiver of his presence once he learned that the hearing had occurred. This issue was not raised until Duran's appeal of the court's ruling, so the trial court was deprived of any opportunity to correct the alleged harm. Accordingly, I recommend that the Court affirm the state court determination that Duran waived his right to be present at the hearing on the motion for new trial and deny relief.

Even if the state court's determination regarding waiver was unreasonable, Duran would also be required to show that he was prejudiced by any due process violation. *See Brecht*, 507 U.S. at 637. For the reasons addressed in detail below, I find that Duran cannot demonstrate that he was prejudiced by his absence.

### INEFFECTIVE ASSISTANCE OF COUNSEL AT POST-TRIAL HEARING

Duran asserts that Benavidez[9] and Knutson provided ineffective assistance at the hearing on his motion for a new trial and motion to recuse Judge Doughty. He states that Benavidez was ineffective in that he took control of the evidentiary hearing when he was no longer counsel of record and waived Duran's right to be present without advising Duran of the hearing or consulting with him about the subject matter of the hearing. (Doc. 1 at 37-38.) He claims that Knutson was ineffective in being unprepared for the hearing, failing to object to the waiver of Duran's presence, failing to object to Benavidez's participation in the hearing, and failing to consult with Duran prior to the hearing. (*Id.* at 39-40.)

---

[9] Because Benavidez had withdrawn as counsel, I am skeptical of Duran's ability to raise an ineffective assistance of counsel claim against him. However, the state court did not address this issue, and I must defer to its determination.

As explained above, Benavidez, who had withdrawn as counsel for Duran, waived Duran's presence and proceeded to represent him during this hearing. *See also* August 19, 1998 Hearing Tape Recordings. Benavidez questioned witnesses, testified, and argued the motions. *Id.* Knutson, counsel of record, remained almost entirely silent throughout the hearing. *See id.* Following the arguments, the trial court denied the motion to recuse. After hearing testimony and argument on the motion for new trial, the court found that there was an attorney-client relationship between Key and Duran based on a case that concluded with a plea on March 1, 1996. RP at 410. It also determined that Stevens prosecuted the case from July 30, 1996. *Id.* The court found that, once Key became the District Attorney on January 1, 1997, he implemented a traditional firewall with regard to the Duran case, and there was no communication between Key and Stevens about the case aside from discussion about the appearance of a conflict. *Id.* The court further determined that Key entirely divorced himself from all involvement in the prosecution of the case and that Stevens had absolute discretion to handle the case. *Id.* at 411. The court concluded that no special circumstances required the disqualification of the entire district attorney's office and that there was no conflict of interest, and it denied the motion. *Id.*

This ineffective assistance claim was exhausted in Duran's direct appeal of the denial of his motion for new trial. The court of appeals concluded that Duran had not established a *prima facie* case of ineffective assistance. Specifically, the court stated that it could not "tell from the record of the proceedings from the trial court whether defense counsel (Benavidez) had spoken to Defendant prior to the hearing on the motion for new trial and how Benavidez may have interpreted Defendant's wishes." (Doc. 11 Ex. W at 2.) Further, it could not "tell from the record to what extent defense counsel ( Knutson) had been involved in the case in the past and how or to what extent his alleged minimal contact with Defendant resulted in a reasonable probability

that the proceedings would have turned out differently." (*Id.*) This decision was summarily affirmed by the state supreme court. (Doc. 11 Ex. Y.)

In reaching its decision, the state court correctly relied on the two-prong *Strickland* test. It appears that the court did unreasonably apply the first prong of the *Strickland* test to the facts before it. It seems clear that by representing a non-client in court, Benavidez acted unreasonably and that, by failing to represent his client in any way, Knutson acted unreasonably. However, I need not consider this prong if the state court correctly applied the prejudice prong.

Under New Mexico law, even where a conflict of interest exists between an employee of a district attorney's office and a defendant, there is no per se rule requiring disqualification of the entire district attorney's office. *State v. Pennington*, 851 P.2d 494, 497-99 (N.M. Ct. App. 1993). In *Pennington*, the district attorney's office hired an investigator who had worked on behalf of the defendant in the case at issue, had obtained confidential information about the case, but was screened off from the case upon joining the district attorney's office. *Id.* at 496. The court held that the issue of disqualification should be left to the sound discretion of trial courts. *Id.* at 499. The *Pennington* Court did note certain special circumstances that the trial court should consider when determining whether to disqualify the office, including prosecutions of great political importance, evidence of bad faith in hiring by the district attorney, or evidence of overzealousness by members of the prosecutor's staff. *Id.*

Here, the trial court applied this law and found that Key was completely screened off from Duran's prosecution. Further, it concluded that no special circumstances warranted disqualification. This conclusion would not have been revised even had Duran received effective assistance of counsel and had the opportunity to present information to the trial court about his attorney-client relationship with Key. Because no additional argument or information could have

been presented to alter the trial court's determination, Duran did not demonstrate that he was prejudiced by the deficient assistance of counsel. Accordingly, this claim of error fails to surmount the standard of § 2254(d), I am limited to the evidence that was before the state court, and I must defer to its determination. I therefore recommend that the Court deny relief on this claim.

## JUDICIAL IMPARTIALITY

On direct appeal from the denial of his motion for new trial, Duran argued that the trial judge should have recused himself from the hearing on the motion for new trial based on personal bias against Duran. (Doc. 11 Ex. W at 3.) At Duran's request, the trial judge sentenced him immediately following the guilty verdict. *See* Jury Trial Tape Recordings 17:391-500. Though the trial judge indicated that it was not his custom to sentence without a pre-sentence report, he proceeded to sentencing and stated,

> Anthony F. Duran, you are one of the most dangerous individuals that I have seen come through this courtroom in the eighteen years that I have been a judge, and my purpose today and throughout this is to give you the maximum possible penalty that I can give you as a matter of law to see that you are never free in America again . . . .

*Id.* at 17:420-27.

The state appellate court, relying on New Mexico law, concluded that the trial judge's remarks about Duran following his conviction and his decision to utilize the full extent of his sentencing authority did not require his recusal. (Doc. 11 Ex. W at 4.) It reasoned that, in order to disqualify a judge, a defendant must show that the judge's bias stems from an extra-judicial source and results in an opinion on the merits based upon knowledge gained outside of his or her participation in the case. (*Id.*)

A criminal defendant does have a right to be tried before an impartial tribunal. *See Harline v. D.E.A.,* 148 F.3d 1199, 1204 (10th Cir. 1998). However, judges enjoy "a presumption of honesty and integrity which is rebutted only by a showing of 'some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated[.]'" *Prickett v. Amoco Oil Co.*, 31 F. App'x 608, 611 (10th Cir. 2002) (unpublished) (quoting *Harline*, 148 F.3d at 1204). To prove a due process violation based on judicial bias, Duran must "show either that actual bias existed, or that an appearance of bias created a conclusive presumption of actual bias." *Phelps v. Hamilton,* 122 F.3d 1309, 1323 (10th Cir. 1997).

As the appellate court stated, when a judge's words are motivated by events originating within the context of judicial proceedings, they are ordinarily insulated from charges of bias. *See Liteky v. United States,* 510 U.S. 540, 555 (1994). Thus, "adverse rulings cannot in themselves form the appropriate grounds for disqualification." *Green v. Branson,* 108 F.3d 1296, 1305 (10th Cir. 1997) (quotation omitted). Neither is disqualification required based on a judge's "expressions of impatience, dissatisfaction, annoyance, and even anger[.]" *Liteky*, 510 U.S. at 555-56. Recusal may be appropriate, however, when a judge's remarks stem from an extrajudicial source. *See id.* at 555.

The state court properly determined and applied the law. There was no evidence that Judge Doughty was motivated by any extra-judicial events or sources, and his recusal was not required. I therefore recommend that the Court defer to the state court decision and deny this allegation of error.

## CONCLUSION

In conclusion, I recommend that Duran's petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 (Doc. 1; Doc. 19) be denied and that a certificate of appealability not be issued.

*See* 28 U.S.C. § 2253(c).

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.